## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VERONICA L. HUNT, | ) |
| | ) |
| Plaintiff, | ) 2:16-cv-1834 |
| | ) |
| v. | ) |
| | ) |
| MCKESSON CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

On May 31, 2017, Plaintiff Veronica Hunt filed the operative Complaint in this case, the

Second Amended Individual, Collective and Class Action Complaint ("SAC"), against Defendant

McKesson Corporation. ("McKesson"). The SAC pleads two counts: (1) failure to pay overtime

in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 207(a), 216(b) ("FLSA"); and (2) failure

to pay overtime in violation of the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.104(c),

333.113 ("PMWA"). (SAC, ECF No. 62.) Pending before the Court is Plaintiff's Motion for 29

U.S.C. § 216(b) Conditional Certification, ECF No. 86, and Plaintiff's Motion for Sanctions, ECF

No. 92. For the reasons that follow, Plaintiffs' Motion for Conditional Certification is granted in

part and denied in part, and Plaintiff's Motion for Sanctions is denied.

### I.    BACKGROUND

Plaintiff alleges that McKesson misclassified her and others similarly situated as exempt

from federal and Pennsylvania overtime pay protections. The Court will summarize the factual

allegations and provide a brief procedural history of the case.

1

## A. **Factual Allegations**

According to Plaintiff's SAC, McKesson organizes its workforce into a structure that classifies jobs by "Function," "Family," "Group," and "Grade." (SAC ¶ 9.) For each position, McKesson has a "job matrix" that explains all the classifications for that position along with various descriptors. (*Id.*) From 2009 to 2014, Plaintiff held the job title of "Administrative Assistant 4." (*Id.* ¶ 11.) McKesson classified this position as one in the "Administrative Service" Function, "Administrative Support" Family, Non-Exempt Group, and Grade 909. (*Id.*) As a non-exempt employee, Plaintiff was paid overtime when she worked more than forty hours per week. (*Id.* ¶ 12.)

Plaintiff was promoted to "Market Research Analyst 1" on October 1, 2014. (*Id.* ¶ 13.) Her new position was classified by McKesson as in the "Marketing" Function, "Market Research" Family, Exempt Group, and Grade 103. (*Id.* ¶ 13–15.) As a result of being exempt, Plaintiff was paid on a salary basis without overtime pay. (*Id.* ¶ 14.) Plaintiff alleges that the new position, Market Research Analyst 1, did not require "the exercise of judgment or discretion." (*Id.* ¶ 16.) Plaintiff points to the position's job matrix, which provided that the "scope" of her position was to "[follow] standard practices and procedures in analyzing situations or data from which answers can be readily obtained." (*Id.* ¶ 16 (citing to Ex. A-Market Research Analyst 1 Job Matrix, ECF No. 62-1).) Plaintiff alleges that much of her job, in reality, consisted of similar "day-to-day" administrative tasks as her prior position and her levels of discretion and judgment matched McKesson's descriptor of "[following] standard practices and procedures in analyzing situations or data from which answers can be readily obtained." (*Id.* ¶ 19–20.)

Plaintiff alleges that her position, in light of both her actual levels of limiteddiscretion and judgment and McKesson's own description of her position's scope, failed to meet any exemption

to FLSA or PMWA overtime requirements. (*Id.* ¶ 21–22.) Despite this, McKesson classified Plaintiff as exempt, and it did not compensate her for overtime worked. (*Id.* ¶ 23.) The SAC alleges that other positions within Grade 103 (and below[1]) encountered the same problem: although classified by McKesson as exempt from overtime pay, Grade 103 positions shared the same levels of discretion and judgment,[2] which failed to reach the requisite level to qualify for exemptions to overtime laws. (*Id.* ¶ 24–25.) Plaintiff says that a common thread among Grade 103 positions exists because McKesson had a policy of classifying its employees as exempt or non-exempt for overtime pay based on the Grade in which the position fell. (*Id.* ¶ 24.) Plaintiff then alleges that McKesson, in essence, got most of Grade 103 "wrong" with respect to overtime pay, and much of that Grade, not just Plaintiff's position, should have been classified as non-exempt.[3] (*Id.* ¶ 26.)

On September 26, 2016, McKesson notified Plaintiff via a "Handout"[4] that all Grade 103 positions, with the exception of manager and supervisor roles within that Grade (of which Plaintiff's position was not), were to be changed to non-exempt beginning on October 23, 2016. (*Id.* ¶ 27.) Plaintiff's position, Market Research Analyst 1, was then changed from Grade 103 (Exempt) to Grade 910 (Non-Exempt). (Pl.'s Br. in Supp., ECF No. 87, at 4–5.) The Handout stated that the change was in exemption status only, with no change in one's duties, and was a result of the Department of Labor (DOL) altering minimum salary thresholds on certain overtime

---

[1] As discussed below, the purported collective was narrowed to only positions within Grade 103. Plaintiff consented to striking "and below" from her purported collective at oral argument on December 19, 2017, and the Court incorporated that change in the Complaint into its Order. (Tr. of Proceedings of Dec. 17, 2017, ECF No. 73, 21:18–22:3; Order, ECF No. 72, at 1.)

[2] Grade 103 job matrices define the scope as either "[f]ollows standard practices and procedures in analyzing situations or data from which answers can be readily obtains" (as Plaintiff's job position's matrix stated) or "[e]xercises judgment within defined procedures and practices to determine appropriate action." (ECF No. 87 at 1.)

[3] Plaintiff does not dispute that manager and supervisor roles within Grade 103 were properly classified as exempt. (SAC, ECF No. 62 ¶ 75.)

[4] The handout is a document, entitled "New FLSA Regulations Project, Employee Q&A—Confidential Information." (*See* Handout, ECF No. 87-2.)

3

exemptions. (*Id.* ¶ 29.) Because Plaintiff's salary had always been above the minimum salary thresholds, Plaintiff alleges that the re-classification from exempt to non-exempt status was not a reaction to DOL changes, but a realization by McKesson that most of Grade 103 had been misclassified as exempt. (*Id.* ¶ 39, 44.) McKesson then refused to compensate Plaintiff for overtime she worked prior to the October 23, 2016, re-classification. (*Id.* ¶ 49–51.)

Based on these events, Plaintiff alleges that she was paid no overtime in violation of the FLSA and PMWA from her promotion in October 2014 until her position was "correctly" re-classified on October 23, 2016. (*Id.* ¶ 59–61.) Plaintiff also alleges that others (approximately 233 employees among 16 different job titles) placed in Grade 103, with the exception of manager and supervisor roles within that Grade, are similarly situated to Plaintiff, as McKesson viewed them as having sufficiently similar levels of discretion and judgment and similarly altered their exemption classification (from Grade 103 and exempt to Grade 910 and Non-Exempt) as part of one large classification overhaul. (*Id.* ¶ 69–70; Pl.'s Mem. in Supp. of Mot., ECF No. 87, at 1.) Therefore, the SAC pleads, McKesson is liable under the FLSA and PMWA to Plaintiff and members of the purported collective for overtime compensation prior to the re-classification on October 23, 2016. (*Id.* ¶¶ 103, 114.)

During discovery, McKesson responded to Plaintiff's First Set of Interrogatories and First Set of Request[s] for Production of Documents. (Ex. A-Decl., Pl.'s Br. in Supp., ECF No. 87-1.) In one response, McKesson listed sixteen job titles that it classified as Grade 103.[5] (*Id.* at 4–12.)

---

[5] Those sixteen (16) positions are: Accountant 2, Buyer 2, Client Relationship Specialist 1, Credit/Collection Analyst 2, Data Management Analyst 2, Field Support Engineer 1, Inventory Analyst 2, Marketing Research Analyst 1, Product Manager 1, Production Planner/Scheduler 2, Project Lead, Project Manager 1-Rearch Op, Quality Engineer 1, Regulatory Affairs Specialist 1, Reimbursement Case Mgt. Analyst 4, Statistician 2.

4

Yet, McKesson produced only nine (9) job matrices for those Grade 103 position.[6] (Ex. C-Job Matrices, Pl.'s Br. in Supp., ECF No. 87-3.) McKesson produced thirteen (13) job matrices for positions in Non-Exempt and Grade 910 (for positions allegedly altered from Grade 103).[7] (Job Matrices, ECF No. 87-3.) Nine (9) of those thirteen (13) Grade 910 matrices correspond with Grade 103 job positions, and each "pairing" provides identical scopes. For example, Client Relationship Specialist 1 has a Grade 103 job matrix and a Grade 910 job matrix in the record, and the description of the position's scope on both matrices is identical. Four job titles only have Grade 910 matrices but no corresponding Grade 103 matrices,[8] and three job titles (identified by McKesson as jobs classified as Grade 103) have no job matrices at all in the record.[9]

Each job matrix uses one of the following descriptions for the "scope" of discretion and judgment:

- Works on problems of moderate scope where analysis of situations or data requires a review of identifiable factors. *Exercises judgment within defined procedures and practices to determine appropriate action.*[10]
- Works on problems of moderate scope where analysis of situations or data requires a review of identifiable factors. *Exercises judgment within defined procedures and practices to determine appropriate action.* Works with the clients through a more Senior Client Relationship Specialist. Normally receives general instructions on routine work, detailed instructions on new assignments.[11]

---

[6] The following positions do not have corresponding Grade 103 job matrices in the record: Accountant 2, Buyer 2, Credit/Collection Analyst 2, Project Lead, Project Manager 1-Rearch Op, Reimbursement Case Mgt. Analyst 4, and Statistician 2.

[7] According to Plaintiff's Brief in Support of her Motion for Conditional Certification, McKesson never produced three Grade 910 matrices: Project Lead, Project Manager 1-Research Op, and Reimbursement Case Mgt. Analyst 4. Plaintiff then assumes those job matrices are consistent with the other Grade 910 matrices. (ECF No. 87, at 6.)

[8] The following positions have a Grade 910 matrix but do not have a Grade 103 job matrices in the record: Accountant 2, Buyer 2, Credit/Collection Analyst 2, and Statistician 2.

[9] *See* note 7 *supra*. In the Order accompanying this Opinion, counsel will be directed to file a Joint Status Report as to whether individuals in those positions fall within the purported collective consistent with this Opinion.

[10] Job Titles: Accountant 2, Buyer 2, Credit/Collections Analyst 2, Inventory Analyst 2, Production Planner/Scheduler 2. (Job Matrices, ECF No. 87-3 (emphasis added).)

[11] Job Titles: Client Relationship Specialist 1. (Job Matrices, ECF No. 87-3 (emphasis added).)

5

- Works on problems of moderate scope where analysis of situations or data requires a review of identifiable factors. Exhibits initiative and curiosity and is able to identify and recommend ideas for projects. Takes the lead on some projects.[12]
- Works on problems of limited scope. *Follows standard practices and procedures in analyzing situations or data from which answers can be readily obtained.* Contact with others is primarily internal. Normally receives detailed instructions on all work.[13]
- *Follows standard practices and procedures in analyzing situations or data from which answers can be readily obtained.*[14]
- Works on problems of moderate scope where analysis of situations or data requires a review of a variety of factors. *Exercises judgment within defined procedures and practices to determine appropriate action.* Builds productive internal/external working relationships.[15]

Plaintiff brings her Motion for Conditional Certification asserting that all 16 job titles (comprised of 233 employees) that carry the former Grade 103 classification prior to the re-classification reflect McKesson's common policy of grouping positions with similar levels of discretion and judgment together. (Pl.'s Br. in Supp., ECF 87, at 1.) Plaintiff continuously points to two reoccurring descriptors in the job matrices' "scopes" identified above: (1) "follows standard practices and procedures in analyzing situations or data from which answers can be *readily obtained*;" and (2) "exercises judgment within defined procedures and practices to determine *appropriate action.*" (*Id.*; Job Matrices, ECF No. 87-3 (emphasis added).) For ease of reference, the Court will refer to the former description as the "readily obtained" scope and the latter as "appropriate action" scope. That common policy, Plaintiff asserts, resulted in a common harm—misclassification to exempt status for all sixteen (16) job positions prior to October 23, 2016. (*Id.*) In further support on her Motion for Conditional Certification, Plaintiff includes her own

---

[12] Job Title: Data Management Analyst 2. (Job Matrices, ECF No. 87-3.)

[13] Job Title: Field Support Engineer 1. (Job Matrices, ECF No. 87-3 (emphasis added).)

[14] Job Titles: Market Research Analyst 1, Product Manager 1, Quality Engineer 1, Regulatory Affairs Specialist 1. (Job Matrices, ECF No. 87-3 (emphasis added).)

[15] Job Title: Statistician 2. (Job Matrices, ECF No. 87-3 (emphasis added).)

Declaration, ECF No. 87-2, and incorporates her SAC. With this record, Plaintiff asks the Court to order opt-in notices be sent to those 233 employees in those 16 job titles. (*Id.*)

## B. **Procedural History and Evolution of the Purported Collective**

Plaintiff filed her initial Complaint, ECF No. 1, on December 8, 2016. Following a Stipulation to Amend Complaint, ECF No. 25, Plaintiff filed her Amended Complaint on May 31, 2017, altering the scope of the putative class.[16] On June 19, 2017, McKesson filed a Motion to Dismiss, ECF No. 36, seeking dismissal of the collective allegations. The Court granted the Motion to Dismiss, concluding that the purported collective did not fulfill the minimal threshold showing requisite under *Zavala v. Wal Mart Stores Inc.*, 691 F.2d 527 (3d Cir. 2012), as there was not "a sufficient relationship within the class or within one or more subclasses to fulfill the relatively light, but nonetheless very real, burden for collective action treatment." (Tr. of Proceedings of Aug. 17, 2017, ECF No. 61, 58:13–16.)

Plaintiff filed her SAC on September 20, 2017, with the same two counts but with an amended FLSA purported collective:

> [A]ll persons who were classified as exempt in position Professional Grade 103 *and below*, with the exception of manager and supervisor roles in Grade 103 *and below*, in the United States at any time during the three years prior to the filing of the initial complaint until the change in classification on October 23, 2016, in positions that were reclassified as non-exempt as of October 2016.

(SAC ¶ 66 (emphasis added).) McKesson filed its second Motion to Dismiss, ECF No. 65, arguing that Plaintiff failed to allege a common policy that caused harm to Plaintiff and "similarly situated"

---

[16] The purported collective in the First Amended Complaint stated:
  [A]ll persons who held positions in professional grades 103 and below and technical grades 502 and below, with the exception of manager and supervisor roles in grade 103 and level 2 job family technical roles in grade 502 and below, in the United States at any time during the three years prior to the filing of the initial complaint until the change in classification on October 23, 2016, who were in positions that were reclassified as non-exempt as of October 2016 as a result of a consistent approach across the company based on grade and job.
(Am. Compl., ECF No. 27 ¶ 36.)

employees. (Def.'s Br. in Supp., ECF No. 66, at 7.) The Court granted the Motion to Dismiss, ECF No. 65, on December 19, 2017, to the extent that by that grant, the "Grade 103 and below" criterion was narrowed to solely "Grade 103," a narrowing to which Plaintiff consented at oral argument. *See supra* n.1. The Motion to Dismiss, ECF No. 65, was otherwise denied.

Following the litigation of two Motions to Dismiss, ECF Nos. 36, 65, the parties sought the Court's involvement in a discovery dispute. (ECF No. 75). The dispute largely revolved around what discovery should be conducted prior to (or, if) the Court grants conditional certification and what discovery should be conducted after any such conditional certification. (*See* Notice (Joint) of Issue for Discovery Conference, ECF No. 78.) On February 7, 2018, the Court ultimately ordered McKesson to answer specific interrogatories and document requests, with the Court making some modifications as to the scope of the requests. (Order of Feb. 7, 2018, ECF No. 81.)

## II.     DISCUSSION

Plaintiff's Motion for Conditional Certification asks the Court to conditionally certify her proposed collective action under 29 U.S.C. § 216(b). Plaintiff's Motion for Sanctions asks the Court to toll the statute of limitations as to the Fair Labor Standards Act claim "to March 26, 2018," as a sanction for McKesson's noncompliance with the Court's Order of February 7, 2018, related to the discovery dispute.[17]

### A.  Conditional Certification pursuant to 29 U.S.C. § 216(b)

The FLSA allows an employee to bring a collective action on behalf of herself and "similarly situated" employees. 29 U.S.C. § 216(b). Plaintiff asserts that conditional certification of an FLSA collective action is appropriate in this case because McKesson's job matrices for Grade

---

[17] What exactly the Plaintiff asks of the Court is in this regard unclear. The Court believes that the fair reading of the relief requested is that the period from February 7, 2018, to March 26, 2018, be excluded from the statute of limitations calculations. (*See* ECF No. 92-2.)

103 positions show that McKesson "deliberately grouped members of the collective together on the basis of a specified level of the employees' discretion and authority that, if proven, would help demonstrate a violation of the FLSA." (Pl.'s Mot. for Conditional Certification, ECF No. 86, at 1). Plaintiff also asks the Court to toll the statute of limitations on the FLSA claims under principles of equitable tolling due to the time it took the parties to litigate McKesson's two motions to dismiss and to resolve the discovery dispute. (*Id.* at 2.)

> ### 1. *Standard of Law: Conditional Certification*

In the Third Circuit, courts typically follow a two-step process for deciding whether a suit brought under § 216(b) may properly proceed as a collective action. *See, e.g., Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013); *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 535 (2012); *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2016). At the first step, known as "conditional certification" or the notice stage, "the court makes a preliminary determination as to whether the named plaintiffs have made a 'modest factual showing' that the employees identified in their complaint are 'similarly situated.'" *Camesi*, 729 F.3d at 243 (quoting *Zavala*, 691 F.3d at 535). If the plaintiff satisfies this "fairly lenient standard," the court may "conditionally certify the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Id.* (internal quotations omitted). In other words, the purpose of the first step is to decide whether the proposed class should be given notice of the case. *Zavala*, 691 F.3d at 536. The second step, known as final certification, occurs "[a]fter discovery, and with the benefit of 'a much thicker record than [the court] had at the notice stage.'" *Symczyk*, 656 F.3d at 193 (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)). Both parties agree this case is at the "step one" conditional certification juncture.

Our Court of Appeals has made clear that district courts retain broad discretion in determining whether to so conditionally certify a collective action. *See, e.g., Symczyk*, 656 F.3d at 193 n.5. "Conditional certification, therefore, is not a true certification, but rather an exercise of a district court's discretionary authority to oversee and facilitate the notice process." *Halle v. W. Penn Allegheny Health Sys.*, 842 F.3d 215, 224 (3d Cir. 2016). After the notices are sent, the parties typically engage in more extensive discovery to determine whether the proposed collective plaintiffs are in fact similarly situated to the named plaintiff. *Id.* at 193.

At conditional certification, Plaintiff must make a "modest factual showing" beyond mere speculation "to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224. "Generally, plaintiffs meet the standard by producing some evidence indicating common facts among the parties' claims, and/or a common policy affecting all the collective members." *Meals v. Keane Frac GP LLC*, No. 16-cv-1674, 2017 WL 2445199, at *3 (W.D. Pa. June 6, 2017) (citing 7B Wright, Miller, & Kane, Federal Practice and Procedure: Civil § 1807, at 489-90 (3d ed. 2005)).

## 2. *Analysis: Commencement of Plaintiff's Collective Action*

McKesson initially argues that Plaintiff is not entitled to conditional certification because she has not actually commenced her collective action, as she has failed to file written consent with the Court to become a party plaintiff. *See* 29 U.S.C. §§ 216(b), 256. McKesson asks the Court to hold Plaintiff's Motion for Conditional Certification in abeyance until Plaintiff perfects her putative collective. The Court need not hold the Motion in abeyance because Plaintiff filed two documents: her Declaration in Support of Conditional Certification, filed April 17, 2018 (ECF No. 87-2), and her "Opt-In Written Consent to Become Party Plaintiff," filed May 21, 2018. (ECF No.

98.) Plaintiff argues the latter document was only filed to prevent any delay in the Court's adjudication of the pending Motions, but the Court should consider Plaintiff's Declaration to satisfy her duty to file written consent. (Pl.'s Reply Br., ECF No. 107, at 12 n.7.) The date that a plaintiff gives written consent to join a suit affects resolution of statute of limitations issues, so, to avoid further dispute on the commencement of this lawsuit, the Court must determine whether Plaintiff opted-in via her Declaration on April 18 or via her Written Consent form on May 21.

"Consent-to-sue forms are required in collective actions such as this one; a litigant may not be a party plaintiff unless he or she gives her written consent to do so." *Stone v. Troy Constr., LLC*, No. 14-cv-306, 2018 WL 1479435, at \*4 (M.D. Pa. Mar. 27, 2018) (citing *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 253 (3d Cir. 2012). The FLSA states that collective actions under the FLSA are not considered commenced as to an individual claimant, even the named plaintiff, until that written consent is filed. *Id.* at \*5. If the written consent is not filed concurrently with the complaint, as is the case here, the action is not deemed commenced until the date on which such written consent is filed. 29 U.S.C. § 256. The statute, however, provides no guidance on the requirements or form of the written consent. *Stone*, 2018 WL 1479435, at \*5.

The Court concludes that the Plaintiff's Declaration of April 18, 2018, suffices as her written consent to join the suit. Unlike the sworn affidavit in *Stone*, Plaintiff's Declaration clearly shows Plaintiff's "understanding that she was consenting to be a plaintiff in this collection action under the FLSA." *Id.* Plaintiff declares:

> I am the original Plaintiff in this lawsuit. I read and verified the Second Amended Complaint before it was filed. I am incorporating the Second Amended Complaint here in my Declaration because it accurately states many of the important facts about my employment and the employment of the other employees in Professional Grade 103 who were reclassified as nonexempt as of October 23, 2016.

(Pl.'s Decl. in Supp. of Conditional Certification, ECF No. 87-2 ¶ 4.)

As the Court in *Stone* pointed out, "[c]ourts have shown considerable flexibility in what constitutes 'written consent' as long as the signed document indicates consent to join the lawsuit." *Stone*, 2018 WL 1479435, at \*5 (citing *Manning v. Gold Belt Falcon, LLC*, 817 F. Supp. 2d. 451, 454 (D.N.J. 2011), and *Ketchum v. City of Vallejo*, No. 05-cv-1098, 2007 WL 4356137, \*2 (E.D. Cal. Dec. 11, 2007). The Court notes that *Stone* is now on appeal with our Court of Appeals, *Stone v. Troy Construction*, No. 18-1825 (3d Cir.), and should there be an intervening change in the law on this matter, either party may suggest that the Court revisit this issue.

### 3. *Analysis: Conditional Certification*

McKesson challenges the sufficiency of the factual support for Plaintiff's claims, arguing that Plaintiff fails to present a sufficient factual basis to support a preliminary finding that she is similarly situated with other employees formerly classified in Grade 103 to warrant conditional certification. (Def.'s Br. in Opp'n, ECF No. 106, at 2.) Plaintiff points to the (13) Grade 910 and (9) Grade 103 job matrices to show that the McKesson intentionally grouped together different positions into the same compensation grade on the basis of the scope of discretion and judgment. (Pl.'s Br. in Support, ECF No. 87, at 7.) The job matrices indeed show that McKesson used six different descriptors for a position's "scope" across those Grade 103 job positions. (Job Matrices, ECF No. 87-3.) Plaintiff focuses on two alternate phrases that appear in five of the six "scopes": the "readily obtained" and the "appropriate action" scopes. (*Id.*; Pl.'s Br. in Supp., ECF 87, at 1.) Because Plaintiff pins her "similarly situated" argument on those two phrases, the Court concludes that Plaintiff has failed to show how Data Management Analyst 2, the one formerly Grade 103 position with a scope that does not include either phrase, is similarly situated to the purported collective to include that position in the purported collective. The Court now focuses on the two phrases contained in the five remaining categories identified above that are within Grade 103.

Plaintiff continues to lump together "readily obtained" job positions with "appropriate action" job positions, but Plaintiff has no evidence to show how those two "sub-categories" of Grade 103 are similarly situated to one another other than they share the same Grade 103. Plaintiff makes the assumption that all Grade 103 job positions are based on a specified level of the employee's discretion and judgment (or lack thereof), but the job matrices show that there are at least two different levels of discretion and authority within Grade 103: the "readily obtained" scope and the "appropriate action" scope.

Plaintiff's Declaration provides context and descriptions as it relates to *her* level of discretion and judgment—the "readily obtained" level—but there is no declaration or evidence in the record as to the "appropriate action" level of discretion or authority. In her Brief in Support of Conditional Certification, Plaintiff argues that common evidence among all remaining Grade 103 job titles would indicate that each statutory exception to the overtime provisions of the FLSA would not apply, but Plaintiff fails to show how the two different scopes are "common" to one another in such a way that common evidence could indeed determine such an outcome. *Zavala*, 691 F.2d 527. This is because Plaintiff makes the assumption, without any textual evidence, that both involved scopes place "the same limits to the discretion and independent judgment." (Pl.'s Br. in Supp, ECF No 87, at 7.) Plaintiff repeatedly argues that McKesson "uniformly describes the level of discretion afforded to the relevant employees" but Plaintiff then defines that singular "level" with alternating descriptors. The Court finds no evidence in the record to support the premise that these alternative descriptors constitute a singular level of discretion.

There is no Declaration from an employee with the "appropriate action" scope to explain how it is or is not similar to Plaintiff's "readily obtained" scope. Plaintiff's attempt to focus on a common Grade 103-turned-Grade 910 collective to show common levels of discretion and

judgment casts a net too wide. Rather, to be similarly situated with respect to common levels of discretion and judgment means just that, to have common levels of discretion and judgment. Therefore, the Court concludes that job titles within Grade 103 that do not have a scope described, at least in part, as "follows standard practices and procedures in analyzing situations or data from which answers can be readily obtained" are not similarly situated to those with that scope to support conditional certification. However, the Court does conclude that Plaintiff has presented sufficient evidence to show that those job titles within Grade 103, excluding managers and supervisors, that share a common scope with Plaintiff ("follows standard practices and procedures in analyzing situations or data from which answers can be readily obtained") share a factual nexus with respect to the manner in which McKesson's re-classification policy affected them.[18]

McKesson argues that the scopes provided in the job matrices merely represent minimum qualifications but are insufficient to show that all of those positions are similarly situated. (Blackmon Decl., Def.'s Br. in Opp'n, ECF No. 106-1.) McKesson says that employees can and do perform work that is beyond the minimum established in a matrix for a given position, and, regardless, its Corporate Compensation Group (which created the job matrices) does not control individual employees in other positions and does not dictate their levels of discretion or independent judgment. (*Id.* ¶ 14.) In other words, McKesson argues that the reality of each of these job titles are too different to be placed in a collective that is based on similar levels of discretion and authority/judgment. As an initial matter, the Court has now trimmed down the collective to those positions with a near identical level of discretion and judgment. Second, Plaintiff alleges in

---

[18] This limits the purported collective to the following job titles: Field Support Engineer 1, Market Research Analyst 1, Product Manager 1, QA Engineer 1, and Regulatory Affairs Specialist 1. To the extent the three "missing" job matrices provide a scope that includes the operative "follows standard practices and procedures in analyzing situations or data from which answers can be readily obtained" language, those job positions will also be included. *See* note 9 *supra*. None of the positions for which only one matrix was produced (i.e. the Grade 103 matrix was omitted) have the "readily obtained" scope in the Grade 910 matrix.

her Declaration that her experience confirms the limited and routine nature of her job as it was defined by McKesson in the job matrix. (Hunt Decl., ECF No. 87-2 ¶¶ 5–6.) This is sufficient evidence, at this stage, to show that the descriptors in the job matrices match the reality of a position's actual scope of discretion and authority/judgment. The fact that the purported collective may include different positions in different departments is not per se fatal at the conditional certification phase, as McKesson argues. The Court has limited the collective to what would appear to be, about, thirty-seven (37) individuals across five (5) positions that share an identical core "scope" of authority and judgment.[19] *See Hively v. Allis-Chalmers Energy, Inc.*, No. 13-cv-106, 2013 WL 5936418, at *6 (W.D. Pa. Nov. 5, 2013) (distinguishing cases where the purported collective numbered in the thousands and plaintiffs proffered little evidence). In *Hively*, this Court granted conditional certification, noting that the purported collective shared the same basic responsibilities even though defendants alleged that the duties differed among the various positions. 2013 WL 5936418, at *5.

McKesson cites *Stallard v. Fifth Third Bank*, No. 12-cv-1092, 2013 WL 12308493 (W.D. Pa. Dec. 12, 2013), and *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941 (W.D. Ark. 2003), to support its argument that McKesson's grouping of different titles together cannot alone warrant conditional certification. As a factual matter, it is *McKesson's* grouping of different titles with identical definitions of discretion and judgment (which Plaintiff attests were accurate in practice) and *McKesson's* identical treatment of that group for purposes of overtime exemptions that makes those job positions sufficiently similarly situated at the conditional certification stage. The

---

[19] According to McKesson's Exhibit attached to its Brief in Opposition to the Motion for Conditional Certification, ECF No. 106-1, McKesson employs one (1) Field Support Engineer, one (1) Marketing Research Analyst 1 (Plaintiff), eight (8) Product Manager 1, four (4) Quality Engineer 1, and twenty-three (23) Regulatory Affairs Specialist 1. Ironically (or perhaps not), all five of those positions have both Grade 103 *and* Grade 910 job matrices in the record. For all five positions, the scope—"readily obtained"—appears in the Grade 103 matrices and the Grade 910 matrix.

defendant in *Stallard* made similar arguments to those advanced by McKesson here, but the Court granted conditional certification, concluding that the commonality supported by "information derived from the [d]efendant" cleared the "'modest' or 'intermediate' hurdle." 2013 WL 12308493, at *2.

In *Freeman*, the plaintiff pled a collective of "all salaried Wal-Mart employees below officer level no matter what the nature of their duties." 256 F. Supp. 2d at 945. The *Freeman* Court appropriately noted that such a collective implies that "if an employer has two or more non-officers, salaried employees who allegedly are not being paid overtime as required by the Act, then a collective action would be appropriate under 216(b)." *Id.* Although the purported collective in *Freeman* is not too far off from the collective that Plaintiff's initially pled, it is a far cry from the purported collective now at issue in this case.

By cabining the collective as the Court has, based on the requisite level of similarity in the record, it obviates McKesson's argument that the collective is based solely on McKesson's treatment of employees as exempt or non-exempt. This is a conditionally certified collective that is comprised of a group of employees for whom McKesson itself describes the scope of their discretion and judgment *identically*.

At this point, the Court cannot conclude that "the commonality of generally applicable employment and compensation policies *necessarily* pales in comparison to individualized determinations of liability." 2013 WL 12308493, at *3. Indeed, "an examination of the merits of the claims and defenses does not occur at this stage of the proceedings." *Id.* McKesson will have an opportunity at final certification to challenge whether those who have opted in actually did have

sufficiently similar levels of discretion and judgment to overcome any differences in duties and titles.[20] Therefore, the Court grants conditional certification for the following collective:

> All persons who worked at McKesson Corporation in the United States and were (1) classified as exempt in positions in Grade 103, (2) had a position with a scope of "follow[ ] standard practices and procedures in analyzing situations or data from which answers can be readily obtained," (3) at any time between March 23, 2015, and October 23, 2016.[21]

### 4. Equitable Tolling

"The commencement of a lawsuit does not act to toll the statute of limitations under the FLSA for putative class members. Instead, the statute of limitations continues to run until putative class members file consent forms." *Stickle v. SCIWestern Mkt. Support Ctr., L.P.*, No. 08-cv-083, 2008 WL 4446539, at *22 (D. Ariz. Sept. 30, 2008) (citing 29 U.S.C. § 256 (setting the determination of commencement of actions)). "Congress knew when it enacted 29 U.S.C. § 256 that time would lapse between the filing of the collective action complaint by the named plaintiff and the filing of written consents by the opt-in plaintiffs, yet it chose not to provide for tolling of the limitations period." *Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178, 194 (M.D. Pa. 2008). Tolling may be appropriate: "(1) if the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 845 (3d Cir. 1992) (internal quotations and alterations omitted). The plaintiff bears the burden to prove the application of such tolling. *Courtney v. La Salle Univ.*, 124 F.3d 499, 505 (3d

---

[20] To the extent McKesson argues that performance evaluations, produced in discovery, defeat any notion that Plaintiff and other Grade 103 employees could be "similarly situated," McKesson did not actually put any of those performance evaluations in the record. (*See* Def.'s Br. in Opp'n, ECF No. 106, at 8.) Since those documents are not before the Court, the Court cannot say one way or another whether the job evaluations obviate Plaintiff's modest factual showing.

[21] The time frame in this collective is the time frame sought in Plaintiff's Motion for Condition Certification. (ECF No. 86.) McKesson did not object to either date.

17

Cir. 1997). Plaintiff points to two types of delays from which it bases its arguments for equitable tolling: litigation on the two motions to dismiss and litigation of the discovery dispute.[22]

With respect to the motions to dismiss, the Court ruled completely in McKesson's favor on the first Motion to Dismiss, ECF No. 36, and granted in part McKesson's second Motion to Dismiss, ECF No. 65. (*See* Order, ECF No. 60; Order, ECF No. 72.) Furthermore, the Court was able to rule on each motion on the same day that it held oral argument. (*Id.*) Plaintiff does not, and could not, assert that either Motion to Dismiss was the product of McKesson's misconduct, extraordinary circumstances, or forum problems. Rather, the delays in this case stemming from the Motions to Dismiss litigation is attributable to Plaintiff herself, as an opportunity cost of pleading a broad collective. The efficiency of those rulings and the fact that Plaintiff was to a degree unsuccessful bars Plaintiff from obtaining such extraordinary relief as equitable tolling on that basis. *See Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178, 193 (M.D. Pa. 2008) ("[E]quitable tolling is a "remedy available only sparingly and in extraordinary situations.") (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997)).

Plaintiff has a more compelling case for tolling with respect to the discovery dispute, as the Court ruled largely in Plaintiff's favor, compelling McKesson to respond to various discovery requests. The parties alerted the Court of the dispute on January 31, 2018, and the Court scheduled a telephonic status conference on February 7, 2018, without waiting for formal briefing on the dispute. (ECF No. 75.) An Order resolving the dispute was issued that same day. (Order, ECF No. 81.) However, Plaintiff argues that McKesson did not comply with that February 7, 2018, Order's directive until March 26, 2018, when it produced the requested Grade 103 job matrices, which were necessary for Plaintiff's Motion for Conditional Certification. (*See* Pl.'s Mem. In Supp., ECF

---

[22] The doctrine of equitable tolling is read into every federal statute of limitation, including the FLSA. *William A. Graham Co. v. Haughey*, 646 F.3d 138, 147 (3d Cir.2011).

18

No. 87, at 15.) McKesson counters that it had already agreed to provide those job matrices to Plaintiff before the Court conducted its February 7, 2018, telephone status conference. (*See* Def.'s Resp. in Opp., ECF No. 106, at 15.)

Contrary to McKesson's argument, Plaintiff is alleging that McKesson actively misled Plaintiff by slow-walking discovery. The Court agrees that some relief is appropriate here. Although McKesson produced some matrices prior to the dispute (presumably the Grade 910 job matrices), McKesson did not produce Grade 103 job matrices until March 26, 2018. The Grade 103 matrices clearly fell within the Court's Order to produce documents "related to the reclassification process of Professional Grade 103 describing the duties and responsibilities of individual positions within Professional Grade 103" on or before March 7, 2018. (Order ¶ 4, ECF No. 81.) Although McKesson reported on March 7, 2018, that it would update Plaintiff in sixteen days (March 23, 2018) as to whether such "responsive, non-privileged documents" existed, it did not give an estimated timeline for production. (Ex. B-E-Mail Between Counsel, Def.'s Br. in Opp'n, ECF No. 104-1.) Such documents were produced on March 26, 2018. (Def.'s Br. in Opp'n, ECF No. 104, at 3.)

The job matrices were central to this case from "Day One" and were clearly identifiable documents in McKesson's possession. Similarly, the switch from classifying positions as Grade 103 to Grade 910 was also a core theme from "Day One." The Court concludes based on its review of the record and its knowledge of the case (including specifically the discovery dispute) that it would have been entirely reasonable for McKesson to timely comply with the production request and to produce the remaining matrices if not prior to the Court's intervention then certainly within fourteen (14) days of the February 7, 2018, Conference and Order. Therefore, the Court will toll the statute of limitations from February 21, 2018, to March 26, 2018. Although the parties were

19

embroiled in a discovery dispute prior to the Court's involvement beginning on February 7, 2018, the fact that such a dispute arose is insufficient in and of itself to justify any additional tolling in this case. The Court promptly held a status conference on the dispute and issued an Order that same day. (Order, ECF No. 81.) The tolling period Ordered here is sufficient to account for McKesson's delay in producing the additional job matrices, which were critical to Plaintiff's Motion for Conditional Certification.

### 5. Notice

McKesson asks that if this Court grants conditional certification that McKesson have additional time to review or revise Plaintiff's notice, as it claims that it had insufficient time to review Plaintiff's Proposed Notice. The Court acknowledges that "disputes relating to the form and content of notice would be best resolved by the parties," so the Court will allow the parties to further meet and confer regarding the notice and notice procedures. *Hively*, 2013 WL 5936418, at *8. However, the Court will toll the FLSA limitations period for the additional period beginning ten (10) days from the date of the Order accompanying this Opinion until the date the Court approves such Notice.[23]

### B. Motion for Sanctions

Plaintiff's Motion for Sanctions solely seeks relief in the form of tolling the statute of limitations of the FLSA claim. (Proposed Order, ECF No. 92-2.) The Court addressed the equities

---

[23] The Court concludes that the tolling of this time period (the meet and confer, to the extent it exceeds ten (10) days, and the time it will take the Court to review any resulting proposed notice) meets the principles of equitable tolling, as Plaintiff has "been prevented from [sending notices] in a timely manner due to sufficiently inequitable circumstances." *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir.2009) (quoting *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir.1999)). "Sufficiently inequitable circumstances" include circumstances where the plaintiff has been prevented from asserting her rights in some extraordinary way despite the exercise of due diligence in pursing and preserving her claim. *Id.* The facts here meet that standard. The Court is not persuaded that the Defendant has not had sufficient opportunity to review or revise Plaintiff's Proposed Notice. (Proposed Notice, ECF No. 86-1.) After all, the Proposed Notice was filed on the docket over two months prior to Oral Argument on the Motion for Conditional Certification. (Minute Entry for Proceedings held on June 28, 2018, ECF No. 110.) McKesson has had more than sufficient time to review the Proposed Notice.

20

of tolling above, and the Court's decision to toll as a result of the discovery dispute adequately addresses and sufficiently provides the relief sought in Plaintiff's Motion for Sanctions. As a result, Plaintiff's Motion for Sanctions is denied as moot.

### III.   <u>CONCLUSION</u>

For the reasons stated in this Opinion, Plaintiffs' Motion for 29 U.S.C. § 216(b) Conditional Certification, ECF No. 86, is granted in part and denied in part. Plaintiff's Motion for Sanctions, ECF No. 92, is denied as moot. An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: August 28, 2018

cc:    All counsel of record